26669. SOVEREIGN CAMP WOODMEN OF THE WORLD v. WHITAKER.

DECIDED MARCH 3, 1938.

*Robert G. Plunkett, R. F. Scarborough,* for plaintiff in error.
*E. L. Rowland, J. Roy Rowland,* contra.

STEPHENS, P. J. Mrs. Pearl Whitaker sued the Sovereign Camp of the Woodmen of the World in the city court of Wrightsville alleging that the defendant is a. fraternal beneficiary association duly licensed to transact business in the State of Georgia and is indebted to the plaintiff in the sum of $1000 besides interest, damages, and attorney's fees on a contract dated January 14, 1935, by which it insured the life of Nathan D. Whitaker in the sum of $1000, the plaintiff being the beneficiary under the contract, a copy of which is attached to the petition; that the insured died on May — 1935, and at the time of his death had complied with all the conditions of the contract and had paid all premiums, and the contract was in full force at the time of his death; that she furnished to the defendant the required proofs of death more than six months before filing the suit, that the defendant refused payment, which refusal was in bad faith, and the defendant is indebted to the plaintiff for damages and attorney's fees.

The defendant answered the suit, admitting certain allegations, denying others, and setting up that under the terms of the bene-

ficiary certificate the deceased was required to pay to the financial secretary of his camp, on or before the last day of each month, the amount of $1.72, and that under the provisions of the certificate and the constitution, laws, and by-laws of the association, it was provided that if he failed to pay said monthly instalments on or before the last day of each month he would thereafter immediately become automatically suspended, his certificate become null and void, and his membership in the association fully terminated, and that upon such suspension he could not thereafter be reinstated as a member, or reinstate his certificate, by the payment of the delinquent instalments unless he was in good health at the time of his attempted reinstatement, and remained in good health for thirty days thereafter; that the certificate was null and void at the time of the death of Whitaker, because he had failed to pay, on or before the last day of April, 1935, to the financial secretary of his camp, the April, 1935, monthly instalment of his annual assessment, and by reason thereof he automatically became suspended on May 1, 1935, and that the certificate of membership became null and void; that the certificate of membership was never thereafter reinstated according to the terms thereof, and by reason thereof the defendant is not liable to the plaintiff in any amount whatever.

The plaintiff amended her petition alleging that at the time of the death of Whitaker the defendant had waived its strict requirements as to payment of premiums and assessments by its custom in dealing with the insured, by accepting premiums or assessments or dues after the first of each month during the course of the contract; that the defendant accepted every premium from the date of the issuance of the certificate, after the first of the month, and that by its course of dealing with the insured in accepting such past-due premiums the defendant thereby waived payment of the premiums on the first of each month; that the insured, at the time of his death, was a member in good standing in the Sovereign Camp by complying with the custom established by the defendant in accepting past-due premiums; that during the entire time the certificate was in force only three collections were due on the first of the month as stipulated in the contract, that the first premium was paid on the 9th of March 1935, upon delivery of the certificate, and on April 6th he paid the instalment due the company on the

last day of March for the March assessment, which was duly accepted by the company, and that he was called upon by the financial agent and did pay, through the financial agent on the 6th day of May, the premium due for April, which was due the last day of April. The defendant demurred to the petition as amended upon several grounds which need not be stated. This demurrer was overruled and exceptions pendente lite were filed by the defendant. The case was tried and the jury found for the plaintiff. The defendant moved for a new trial on the general grounds, which motion was afterwards amended by adding seven special grounds which need not be stated. The motion for new trial was overruled and the defendant excepted, assigning error on the overruling of the demurrer and the overruling of the motion for new trial.

The facts are without dispute. What the parties differ about is the legal consequences from these facts. The evidence showed that though the certificate of membership or policy was dated January 15, 1935, it was never delivered and accepted by the insured until March 9, 1935. On this date he paid a sum sufficient to cover back dues up to March 1. He did not pay his March instalment until April 6. At this time the financial secretary of his local camp, whose duty it was to collect instalments from the members of the camp and remit the money to the main office, had not made up his account and remitted his collections to the main office. He took Whitaker's $1.72 for the March instalment and included it in his remittance to the main office, without making any note or reporting that the payment was late. When the April instalment became due and remained unpaid the financial secretary, in making his report to the main office on May 10, noted Mr. Whitaker as suspended for non-payment of the April instalment. On May 12, after this report was sent off, a Mr. McAfee paid to the financial secretary $1.72 to cover Whitaker's April instalment. On the next day the secretary remitted the amount to the main office. Whitaker died on May 14.

The certificate sued on provided that it was issued and accepted subject to the provisions of the constitution, laws, and by-laws of the association, and provided that "if the payments required by the constitution, laws, and by-laws of the association are not paid by the member this certificate shall be null and void," and that "should this certificate become void for any cause, acceptance of

any payment from or for the member, or other act by any camp officer or member of the association thereafter, shall not operate as an estoppel or as a waiver of the terms of this contract." The application of Whitaker for the certificate, which he agreed should constitute the basis for and form a part of the certificate, provided that if he did not make the payments required by the certificate and by the constitution and by-laws of the association at the time and for the amount required, the certificate should be null and void and all payments made by him should be retained by the association. The constitution and by-laws of the Sovereign Camp provided that the liability of the association should not begin until after the applicant shall have paid entrance fees, one or more advance monthly instalments of assessments and dues, signed his certificate and acceptance, and had delivered to him in person his certificate while in good health. The constitution and by-laws further provided that if the member failed to pay a monthly instalment on or before the last day of the month "he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the association shall thereby be completely terminated, and all moneys paid on account of such membership shall be retained by the association, etc." It was also provided that "such person if in good health, may thereafter make a new contract with the association, upon the same terms and conditions, by complying strictly with the provisions of these laws," and that "any person who has become suspended because of the non-payment of any instalment of assessment, if in good health may, within three calendar months from the date of his suspension again become a member of the association by the payment of the current instalment of assessment and all instalments of assessments which shall have been paid to maintain him as a member," and "whenever instalments of assessments are paid by or for the person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such instalments when so paid after he has become suspended for non-payment of assessments shall be received and retained without waiving any of the provisions of this section or of these laws until

such time as the secretary of the association shall have received actual, not constructive or imputed, knowledge that the person was not in fact in good health when he attempted to again become a member, provided, that the receipt and the retention of payment of such instalments in case such person is not in good health shall not make such person a member or entitle him or his beneficiary to any rights whatever," and that "any attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good health at the time and continue in good health for thirty days thereafter, and the payment of any unpaid instalments of assessment shall be a warranty that such person is at the time in good health and that if the warranty is not true the certificate shall be null and void."

From the foregoing it appears that the certificate was not to take effect until it was paid for and delivered personally to the insured. This was not done until March 9, when the insured signed a written acceptance and paid what appeared to be due as if the certificate had been in force since January 15. He was not obliged to take up the certificate at all. So the March payment can not fairly be considered as a waiver of any due premium because none was past due. The plaintiff in error does not claim that the certificate was made void by the delay of six days in paying the March instalment, although this delay, as stated, was not reported to the main office. Consequently it must be taken that the association waived this delay and the certificate was continued in force until April 30. The April premium was not in default until May 1. It continued in default until May 12. In his report of May 10, the financial secretary noted the default and listed Whitaker as "suspended." On May 13, he remitted to the home office the amount of the April premium as a payment by a suspended member. Under the contract a suspended member could reinstate his certificate at any time within three months by paying the back dues, such payment being a warranty that he was in good health and would continue in good health for thirty days thereafter. Under these provisions the insurance would not be in effect until thirty days after payment of the delinquent premium, provided the insured remained in good health during that time.

It is contended by the defendant in error that the contract had been modified by a course of dealing on the part of the association

which led the insured to believe that he could pay his premiums within a reasonable time after they became due. This contention can not be sustained. The fact that one payment had been accepted six days after it was due was not sufficient to constitute a course of dealing such as would modify the plain provisions of the contract, or authorize the belief on the part of the insured that the next premium would be accepted twelve days after it was due. Under the contract, a failure to pay a premium on the due date automatically made the certificate void, and thereafter the insured had the right to revive the certificate by a late payment, provided he was then in good health and continued so for thirty days. Consequently the acceptance of such a payment should be considered as made in accordance with the contract rather than in derogation thereof. There was no evidence authorizing the jury to find that the acceptance of the payment of March 12, was unconditional rather than an effort to reinstate the lapsed contract. The authorities cited by the defendant in error do not apply to the facts of this case. In order for a conditional acceptance of an over-due premium to amount to a waiver, the condition must be fulfilled; and one acceptance of a late payment is not enough to require the insurer to give notice to the insured of intention to rely on the exact terms of the agreement as provided in Code, § 20-116. As to conditional acceptance of a past-due premium see *Moman* v. *Bankers Health & Life Ins. Co.*, 35 *Ga. App.* 565 (134 S. E. 341) ; 3 Joyce on Insurance (2d), § 1367. "Evidence of the acceptance of one single over-due premium or assessment, or of a few separate instances, is insufficient of itself to establish a waiver of forfeiture claim for non-payment of a subsequent premium or assessment." 3 Joyce on Insurance (2d), § 1368.

The evidence did not authorize the jury to find that the association had waived the right to claim that the insurance had lapsed because of failure to pay the April premium. The verdict was without evidence to support it. The court erred in overruling the motion for new trial brought on the general grounds.

*Judgment reversed. Sutton and Felton, JJ., concur.*