Original
No. 6432

BRUCE ANTHONY

v.

NATIONAL GRANGE MUTUAL INSURANCE COMPANY

September 28, 1973

*Warren B. Rudman,* attorney general, and *Edward A. Haffer,* attorney (*Mr. Haffer* orally), for the New Hampshire Insurance Department.

*Hall, Morse, Gallagher & Anderson* and *Thomas W. Porter* (*Mr. Porter* orally) for National Grange Mutual Insurance Company.

GRIMES, J. This case concerns the insurance department's order requiring an insurance company to renew an initial 6-month automobile liability policy for another six months under the insurance department's interpretation of provisions of RSA ch. 417-A (Supp. 1972).

Anthony purchased his first automobile liability insurance policy from the National Grange Mutual Insurance Company for the 6-month term from February 12, 1971, to August 12, 1971. On June 30, 1971, the Welch Insurance Agency as the agent of the company sent Anthony a notice stating that an unpaid premium of $8.50 must be paid if Anthony wished to receive a policy renewal. A similar notice was sent to Anthony on July 29, 1971. When he failed to respond to either of these notices, the agency sent him a further letter dated August 10, 1971, stating that $8.50 was overdue and, after stating that they did not know if he wished the policy renewed, stated: "If we do not hear from you in 5 days, we will return the policy to the company for flat cancellation."

Anthony testified that he did not receive the last letter until Friday, August 13, one day after the 6-month policy expired, and that on Monday, August 16, he purchased a money order for $8.50 and immediately mailed it without

any statement of intent to renew. The agency received the money order on August 17. On August 18, Anthony was involved in an automobile accident and called the agency the next day to report the accident. He then for the first time stated his desire to renew the policy. The agency did not then inform him of the policy's cancellation but later that day the agency wrote him indicating that his policy had expired on August 12 and that the renewal policy had been returned to the company for "flat cancellation."

On August 21, 1971, Anthony reported the accident with no statement of liability coverage to the New Hampshire Department of Safety, which on October 28, 1971, suspended his license and vehicle registration. He filed a complaint against the company with the insurance department on the same day.

The insurance department contacted the company's counsel by phone about the complaint. From a subsequent phone conversation between the insurance department's senior rate analyst and Anthony, and subsequent phone conversations between the senior rate analyst and the company's counsel, the senior rate analyst determined that the company must issue a renewal policy to Anthony for the period August 12, 1971, to February 12, 1972, under the mandate of RSA ch. 417-A (Supp. 1972). The company refused to do this, and as a result the insurance department ordered it to do so by letter dated November 9, 1971, and signed by the senior rate analyst.

On November 15, 1971, the company applied to the insurance department for a hearing pursuant to RSA 400-A:17 III (Supp. 1972), and when relief was denied by failure to hold a hearing within thirty days (RSA 400-A:17 V (Supp. 1972)), the company requested a rehearing under RSA 541:3. The request for a rehearing was granted, and after this hearing the insurance commissioner issued a finding that affirmed the insurance department's order of November 9, 1971. The company appealed to this court under RSA 541:6.

The parties differ in their interpretation of RSA 417-A:1 II (Supp. 1972) which states, "'Renewal' or 'to renew' means

the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer, such renewal policy to provide types and limits of coverage at least equal to those contained in the policy being . . . extended: Provided, however, that any policy with a policy period or term of less than twelve months or any period with no fixed expiration date shall for the purpose of this chapter be considered as if written for successive policy periods or terms of twelve months."

This section does not, as the department contends, convert all 6-month policies into 12-month policies for purposes of cancellation or refusal to renew by the company.

Since the company had made numerous offers to renew the policy even though Anthony had unpaid premiums, we think the law in force at the time and later codified in RSA 417-A:5-a (Supp. 1972) allows the company to fail to renew for nonpayment of premium without sending the insured any statutory notice of nonrenewal.

RSA 417-A:5 (Supp. 1972) requires the insurer to issue notice only if the *insurer* refuses to renew the contract. When the insurer offers to renew the contract and the *insured* does not accept the offer to renew, the notice requirements of RSA 417-A:5 do not apply because it is the insured and not the insurer who has failed to renew. *Nationwide Mut. Ins. Co. v. Cotten,* 280 N.C. 20, 185 S.E.2d 182 (1971).

In view of our holding, we need not consider the constitutional questions which were briefed and argued.

*Appeal sustained.*

All concurred.